IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **SARA RAMIREZ-NIEVES,** | |
| Plaintiff, | |
| v. | Civil No. 16-1749 (DRD) |
| **MUNICIPALITY OF CANOVANAS, et al.,** | |
| Defendants. | |

<u>**OPINION AND ORDER**</u>

Plaintiff Sara Ramirez-Nieves filed suit against the Municipality of Canovanas ("Municipality") and Lorna Soto-Villanueva ("Soto-Villanueva"). Plaintiff brought this action under Section 1983 of the Civil Rights Act, 42 U.S.C. § 1983, alleging violations of the First and Fourteenth Amendments of the United States Constitution; Articles 1802 and 1803 of the Civil Code, 31 L.P.R.A. §5141-5142 ("Articles 1802 and 1803"); Puerto Rico Law No. 100 of 1959, 29 L.P.R.A. § 146, *et seq.* ("Law 100"); Puerto Rico Law No. 115 of 1959, 29 L.P.R.A. § 194(a), *et seq.* ("Law 115"); and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* and 42 U.S.C. § 12102(3)(A). Pending before the Court is Defendants' *Motion to Dismiss* (Docket No. 24). For the reasons elucidated below, Defendants' motion is hereby **GRANTED in part and DENIED in part**.

## I.       FACTUAL BACKGROUND[1]

In 1994, the Municipality hired Plaintiff Sara Ramirez-Nieves as a temporary employee. On November 16, 1995, Plaintiff was named Redaction Clerk 1, a permanent position. Plaintiff held several

---

[1] The facts outlined below are neither exhaustive nor indicative of all the factual allegations set forth in the complaint.  The facts, as outlined, simply relate to the arguments set forth in the pending motion to dismiss.

permanent positions within the Municipality until October 1, 2001, when she was named Electronic Systems Programmer. On April 30, 2004, Plaintiff's position was reclassified to Electronic Systems Operator.

On August 1, 2004, Plaintiff was named to the trust position of Special Assistant to the Mayor, Jose Soto-Rivera ("Chemo Soto"), Plaintiff's common-law husband.[2] On October 1, 2006, Plaintiff was promoted to the position of Director of Community Affairs, another trust position. On August 17, 2007, Plaintiff was named Director of Cultural Affairs, another trust position. Plaintiff resigned as Director of Cultural Affairs and was reassigned to her permanent position as Electronic Systems Operator on December 31, 2009. On October 1, 2010, Plaintiff was again named Special Assistant to Mayor Chemo Soto.

In January of 2012, an election year[3], Mayor Chemo Soto confided in Plaintiff that he was considering withdrawing from the race for reelection and was torn as to which of his children to support as his successor for Mayor of Canovanas, Defendant Soto-Villanueva or Jose Soto-Villanueva ("Yukon"). Around this time, Chemo Soto held a meeting in the home he shared with Plaintiff. Present at the meeting were Jose Rodriguez-Estrada ("Rodriguez-Estrada"), Deputy Mayor of the Municipality; Arlene Barreto-Horta ("Barreto-Horta"), Director of Human Resources of the Municipality; Lillian Rodriguez-Garcia ("Rodriguez-Garcia"), Finance Director of the Municipality; Rosalyn Correa ("Correa"), Communications Director of the Municipality; Eyla Cardona-Guadalupa ("Cardona-Guadalupa"), Deputy Clerk for the Municipality; and Plaintiff. Those present at the meeting voted on who Chemo Soto should support as his successor. Yukon garnered four (4) votes to Lorna's one (1) vote. Plaintiff did not vote as it was well-known that she supported Yukon.

Despite ending her relationship with Chemo on February 8, 2012, Plaintiff remained Special Assistant to the Mayor. On May 17, 2014, Chemo Soto announced that he was resigning as a Mayor of Canovanas, effective on June 30, 2014. Plaintiff immediately began speaking to coworkers and residents of

---

[2] Plaintiff was Mayor Chemo Soto's common-law wife from September 2006 until February 2012. The pair resided together during the above-referenced period.
[3] The election cycle in Puerto Rico mirrors that of the United States. Elections are held every four years on the same date as those held in the United States. Accordingly, 2012 and 2016 are the election years relevant to Plaintiff's suit.

Canovanas in hopes of increasing support for Yukon as Chemo's successor. Later that month, however, Chemo announced publically that he would support Defendant Soto-Villanueva as his successor. On July 1, 2014, Defendant Soto-Villanueva was sworn in as Mayor of the Municipality for the remainder of her father's term.

At all times relevant to her claims, Plaintiff's assignment as Special Assistant to the Mayor had been to oversee several administrative matters related to a day-care center run by the Municipality, "Los Indiesitos" (in Spanish, "the Little Indians"), Plaintiff's duties at the center consisted of supervising personnel, coordinating activities and social services for the children, coordinating the training for the center's employers, drafting proposals to request federal funding or the daycare, and drafting letters and memoranda.

On August 28, 2014, Plaintiff met with Defendant Soto-Villanueva and Defendant explained that she did not trust Plaintiff due to her support of Yukon as Chemo's successor. Defendant also mentioned that Plaintiff would be removed as Special Assistant to the Mayor and was to return to her permanent position as Electronic Systems Operator. During the meeting, Defendant was aggressive and accused Plaintiff of attempting to alienate her father, Chemo. Defendant demanded Plaintiff speak to Yukon and convince him to drop out of the New Progressive Party's ("NPP") primary for Mayor of the Municipality. The following day, Deputy Mayor Rodriguez-Estrada phoned Plaintiff and told her Defendant had reconsidered the prior's day determination to return Plaintiff to her permanent post. Plaintiff reported to her regular workplace the following day.

On September 1, 2014, Virginia Levy ("Levy"), Special Assistant to the Mayor, Defendant Soto-Villanueva, approached Plaintiff. Levy demanded to collect on donations Plaintiff had pledged to Chemo Soto's campaign. Specifically, Plaintiff had agreed to attempt to sell tickets to an April 26, 2014 event on behalf of Chemo's reelection. Plaintiff had agreed to donate the total cost of the unsold tickets to Chemo's campaign. In total, twenty (20) tickets, priced at $30, went unsold and, as such, Levy demanded Plaintiff donate those $600 to Defendant's campaign. Levy continued to badger Plaintiff until, on September 26, 2014,

Plaintiff agreed to pay half of the money, $300. Throughout the month of October 2014, Levy continued to call Plaintiff demanding she pay the remaining $300.

On October 3, 2014, Plaintiff called Defendant Soto-Villanueva to discuss work-related matters. However, Defendant returned Plaintiff's phone call only to persuade her to speak to Yukon about withdrawing from the race for mayor. On November 24, 2014, Plaintiff requested paid medical leave under orders from the therapist. On April 21, 2015, the final day of Plaintiff's paid leave, Plaintiff visited the Municipality's Human Resources office to request an extension of her leave, albeit unpaid. Plaintiff received a letter, signed by Defendant, removing her from her trust position and returning her to her career post of Electronic Systems Operator. On August 17, 2015, Plaintiff returned to work as Electronic Systems Operator, a position that paid $1,500 fewer per month than her prior trust position. After being assigned back to her permanent position, Plaintiff was stationed at a desk in a hallway, isolated from her coworkers.

On September 15, 2015, Plaintiff filed a complaint with the Municipality's Human Resources office regarding an incident where Plaintiff found political materials left in Municipality's Human Resources Office's copy machine. Plaintiff mentioned coworker Luz C. Bauzo as a witness to whom she showed the copies and mentioned that Plaintiff notified Human Resources Director Barreto-Horta of the incident. Pursuant to the investigation into the incident, Barreto-Horta and Plaintiff's computers were confiscated. Plaintiff was assigned a different computer the following day.

On October 13, 2015, Plaintiff filed a complaint with the Puerto Rico Office of Governmental Ethics ("OEG," for its Spanish name) regarding the incident with the political materials at the photocopier as well as the sale of tickets to political events in benefit of Defendant's reelection campaign in Municipality offices and during working hours and the distribution of political materials during business hours to the Municipality's employees. The complaint is currently pending before OEG.

At all times relevant to her claims, Plaintiff has been a staunch supporter of Yukon Soto's mayoral bid. At the time of filing, Plaintiff was the secretary of Yukon's campaign, was assisting in fund raising efforts

for the campaign, assisted in the distribution of campaign propaganda, and was often at Yukon's side during campaign activities. A large sign atop her roof promoting Yukon's election effort also adorns her home, which is two blocks away from the Municipality offices.[4] [5]

## II.    PROCEDURAL HISTORY

April 18, 2016, Plaintiff filed a *Complaint* against the Municipality of Canovanas, Lorna Soto-Villanueva in her personal and official capacities, John Does 1-10, and unknown Insurance Company A (collectively, "Defendants") alleging political discrimination in violation of her constitutional rights (Docket No. 1). Plaintiff filed suit under Section 1983 of the Civil Rights Act, 42 U.S.C. § 1983, alleging violations of the First and Fourteenth Amendments of the United States Constitution; Articles 1802 and 1803 of the Civil Code, 31 L.P.R.A. §5141-5142; Puerto Rico Law No. 100 of 1959, 29 L.P.R.A. § 146, *et seq.*; and Puerto Rico Law No. 115 of 1959, 29 L.P.R.A. § 194(a), *et seq.*.

On June 22, 2016, Plaintiff filed an *Amended Complaint* against Defendants (Docket No. 21). Plaintiff's Amended Complaint was nearly identical to her prior complaint with the exception of an additional claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* and 42 U.S.C. § 12102(3)(A).

---

[4] Plaintiff also provided several names of coworkers who were purportedly discriminated against by Defendant Lorna Soto. Rafael Osvaldo Burgos-Quiñones was a heavy-machinery mechanic for the Municipality who was replaced as supervisor of his area after declining invitations to events on behalf of Defendant's election bids; Edwin Marin-Resto's contract as a transitory employee assigned to the Office of General Services was not renewed after openly supporting one of Defendant's rivals in the mayoral election; Aidan Pagan-Cruz was terminated as Special Assistant to the Mayor when he refused to sell tickets to an activity benefitting Defendant's electoral campaign; Taira Rodriguez-Vargas was berated and chastised when she declined to work as chef for an activity planned by Defendant's campaign and was then reassigned to a more demanding and less desirable post; and Sandra Casilla-Rodriguez was subjected to discrimination and adverse employment actions after declining to serve as a ballot officer on behalf of the Defendant's campaign.

[5] The Court is cognizant that some of the facts stated above may fall outside of the applicable statute of limitations for some of Plaintiff's causes of action. Nevertheless, the Court authorizes Plaintiffs to use evidence of the time-barred claims as "background evidence" of her timely claims. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *Rivera-Torres v. Ortiz Velez*, 341 F.3d 86, 98 (1st Cir. 2003).

On August 15, 2016, Defendant Lorna Soto-Villanueva filed a *Motion to Dismiss* (Docket No. 24) joined by Defendant Municipality of Canovanas (Docket No. 27).   Defendants averred the complaint should be dismissed as Plaintiff was a trust employee and, accordingly, Defendant Lorna Soto was free to remove Plaintiff and reinstate her to her permanent post. Defendants also posited that Plaintiff's ADA claims should be dismissed, as there is no individual liability under the ADA.[6] Finally, Defendants argued that Plaintiff had failed to meet Rule 12(b)(6)'s plausibility threshold on her Law 115 and First Amendment Retaliation claims . Specifically, Defendants note that Plaintiff has not pled which constitutionally protected activity was the seed of Defendants' retaliatory actions.

On October 1, 2016, Plaintiff opposed Defendants' *Motion to Dismiss* (Docket No. 38). Plaintiff asseverated that had pled plausible political discrimination, First Amendment retaliation, Law 115, and ADA claims. Plaintiff also explained that her position as Special Assistant to the Mayor was only a trust position by name. In reality, she had no policymaking authority and political affiliation was not a valid requirement of her position.

## II. STANDARD OF REVIEW FOR MOTIONS TO DISMISS

Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).   Under *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007), a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." *See Ocasio-Hernandez v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) ("in order to 'show' an entitlement to relief a complaint must contain enough factual material 'to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'(quoting *Twombly*, 550 U.S. at 555) (citation omitted).   Thus, a plaintiff must, and is now required to,

---

[6] Defendants' arguments for the dismissal of Plaintiff's claims under the Fourteenth Amendment Due Process and Equal Protection Clauses, Articles 1802 and 1803 of the Puerto Rico Civil Code, and Law 100 are not included herein because Plaintiff voluntarily dismissed her claims under these laws. *See* Docket No. 38 at 19.

present allegations that "nudge [his] claims across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a). *Id.* at 570; *see e.g. Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by *Twombly*, 550 U.S. 544, and *Iqbal*, 556 U.S. 662. "Context based" means that a Plaintiff must allege sufficient facts that comply with the basic elements of the cause of action. *See Iqbal*, 556 U.S. at 677-679 (concluding that plaintiff's complaint was factually insufficient to substantiate the required elements of a *Bivens* claim, leaving the complaint with only conclusory statements). First, the Court must "accept as true all of the allegations contained in a complaint[,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action. *Iqbal*, 556 U.S. at 678. "Yet we need not accept as true legal conclusions from the complaint or 'naked assertion[s]' devoid of 'further factual enhancement.'" *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009) (quoting *Iqbal*, 556 U.S. 678) (quoting *Twombly*, 550 U.S. at 557).

Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." *Iqbal*, 556 U.S. 679. This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. *Id.*

Thus, "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 41 (1st Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation." *Id.* at 679-80 (citing *Twombly*, 550 U.S. at 567). "A plaintiff is not entitled to 'proceed

7

perforce' by virtue of allegations that merely parrot the elements of the cause of action." *Ocasio-Hernandez*, 640 F.3d at 12, (citing *Iqbal*, 556 U.S. 679).

The First Circuit has cautioned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" "even if seemingly incredible." *Sepúlveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 30 (1st Cir. 2010) (citing *Twombly*, 550 U.S. at 556); *Ocasio-Hernandez*, 640 F.3d at 12 (citing *Iqbal*, 556 U.S. 679); *see Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely.")(internal quotation marks omitted); *see Ocasio-Hernandez*, 640 F.3d at 12 (citing *Twombly*, 550 U.S. at 556)("[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'"). Instead, the First Circuit has emphasized that "[t]he make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, [but] not a merely conceivable, case for relief." *Sepúlveda-Villarini*, 628 F.3d at 29. Additionally, a district court may not weigh evidence in deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Massachusetts Delivery Ass'n v. Coakley*, 671 F.3d 33, 39 n. 6 (2012)(emphasizing that a primary difference between a motion to dismiss under Rule 12(b)(1) and Rule 12(b)(6) is that, under Rule 12(b)(1), a court may weigh the evidence and make factual determinations).

However, a complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will likely not survive a motion to dismiss. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996). Similarly, unadorned factual assertions as to the elements of the cause of action are inadequate as well. *Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592 (1st Cir. 2011). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." *Id.* at 596; *see Iqbal*, 556 U.S. at 681("To be clear, we do not reject [] bald allegations on the ground that they are unrealistic or nonsensical. . . . It is the conclusory nature of [the] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *see Mendez*

*Internet Mgmt. Servs. v. Banco Santander de P.R.*, 621 F.3d 10, 14 (1st Cir. 2010) (The *Twombly* and *Iqbal* standards require District Courts to "screen[] out rhetoric masquerading as litigation."). However, merely parroting the elements of a cause of action is insufficient. *Ocasio-Hernandez*, 640 F.3d at 12 (citing *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 49 (1st Cir. 2009)).

The First Circuit recently outlined two considerations for district courts to note when analyzing a motion to dismiss. *García-Catalán v. United States*, 734 F.3d 100, 104 (1st Cir. 2013). First, a complaint modeled on Form 11 of the Appendix of the Federal Rules of Civil Procedure which contains sufficient facts to make the claim plausible is ordinarily enough to surpass the standard prescribed under *Twombly-Iqbal*. *Id.* at 104. Second, district courts should accord "some latitude" in cases where "[a] material part of the information needed is likely to be within the defendant's control." *Id.* (more latitude is appropriate in cases where "it cannot reasonably be expected that the [plaintiff], without the benefit of discovery, would have any information about" the event that gave rise to the alleged injury.)(internal citations and quotations omitted).

### III.   LEGAL ANALYSIS

#### A.  Section 1983 Claims

Section 1983 does not create any independent substantive rights; Section 1983 is only a procedural vehicle to vindicate constitutional and other federal statutory violations brought about by state actors. *See Baker v. McCollan,* 443 U.S. 137, 145, n.3 (1979)("Section 1983 . . . is not itself a source of substantive rights, but [merely provides] a method for vindicating federal rights elsewhere conferred . . . ."); *Albright v. Oliver*, 210 U.S. 266 (1994); *Lockhart-Bembery v. Sauro*, 498 F.3d 69, 74 (1st Cir. 2007); *Cruz-Erazo v. Rivera-Montañez*, 212 F.3d 617 (1st Cir. 2000).  Section 1983 merely provides a mechanism to remedy for deprivations of rights that are federally enshrined elsewhere.  *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985). Section 1983 provides:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other

person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

42 U.S.C. § 1983.

When assessing the imposition of liability under Section 1983, we must first ask "(1) whether the conduct complained of was committed by a person acting under the color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 558 (1st Cir. 1989)(citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). Acting under color of state law requires that a "defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because wrongdoer is clothed with authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988)(internal citations and quotations omitted).

Defendants do not attempt to attack the applicability of Section 1983 to Plaintiff's allegations. Nevertheless, at all times relevant to this case Plaintiff and Defendant Soto-Villanueva were employees of Defendant Municipality of, Defendant was acting in her official capacity as Mayor, and Defendant was acting under the color of state law. Therefore, Section 1983 is an appropriate avenue to remedy the alleged conduct that supposedly deprived Plaintiff of her "rights, privileged, and immunities" protected by law. *See Monell v. Dep't of Soc. Serv.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)(holding that Municipalities are "persons" for the purpose of a section 1983 claim, and, therefore, are subject to claims pursuant to the statute.); *see also Rosaura Bldg. Corp. v. Municipality of Mayaguez*, 778 F.3d 55, 62 (1st Cir. 2015)("Liability may be imposed on a municipality for a single decision by a final policy maker.")(citing *Rodríguez–García v. Miranda–Marín,* 610 F.3d 756, 770 (1st Cir.2010)).

### First Amendment Political Discrimination

The First and Fourteenth Amendments protect the rights of individuals to freely associate with others "for the common advancement of political beliefs and ideas." *Kusper v. Pontikes*, 414 U.S. 51, 57, 58

(1973)("The right to associate with the political party of one's choice is an integral part of this basic constitutional freedom.").

"The First Amendment protects associational rights. Incorporated within this prophylaxis is the right to be free from discrimination on account of one's political opinions or beliefs." *Galloza v. Foy*, 389 F.3d 26, 28 (1st Cir. 2004)(citing *LaRou v. Ridlon,* 98 F.3d 659, 661 (1st Cir.1996). The one exception to the rule against political discrimination in public employment is reserved for positions where political loyalty is a legitimate requirement for the position in question. *See Rutan v. Republican Party of Ill.*, 497 U.S. 62, 75-76 (1990); *Branti v. Finkel*, 445 U.S. 507, 516-518 (1980); *Elrod v. Burns*, 427 U.S. 347, 372-73 (1976)(plurality opinion). Subject to the latter exception, government officials cannot discharge public employees simply because of their political affiliations. *See Elrod*, 427 U.S. at 350. Additionally, **"**[p]romotions, transfers, and recalls after layoffs based on political affiliation or support are an impermissible infringement on the First Amendment rights of public employees.**"** *Rutan*, 497 U.S. at 75 (rejecting the view that "[o]nly those employment decisions that are the 'substantial equivalent of a dismissal' violate a public employee's rights under the First Amendment.")(citing *Rutan v. Republican Party of Ill.*, 868 F.2d 943, 954-957 (7th Cir. 1989)). The First Amendment serves to protect the freedom of government employees to associate with a political party, limiting the government's rights to interfere with said beliefs, except in the most compelling circumstances. *Id.* at 76.

To succeed on a First Amendment political discrimination claim, a plaintiff must prove: "(1) that the plaintiff and defendant have opposing political affiliations, (2) that the defendant is aware of the plaintiff's affiliation, (3) that an adverse employment action occurred, and (4) that political affiliation was a substantial or motivating factor for the adverse employment action." *Lamboy-Ortiz v. Ortiz-Velez*, 630 F.3d 228, 239 (1st Cir. 2010). In order to survive the motion to dismiss stage, a plaintiff must make a fact specific showing that his political affiliation was a substantial or motivating factor in the employment decision. *See Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592, 594 (1st Cir. 2011) (citing *Montfort–Rodríguez v. Rey–Hernández*, 504 F.3d

221, 224–25 (1st Cir. 2007)).  Additionally, it is sufficient for plaintiffs to simply allege that they and defendants are affiliated to different political parties. *See Ocasio-Hernandez*, 640 F.3d at 13.

The Court is satisfied that Plaintiff has adequately pled the four prongs required for a prima facie showing of political discrimination under Section 1983. Defendant Lorna Soto was aware that Plaintiff was supportive of Defendant Lorna Soto's political rival, Yukon Soto. Moreover, Defendant made clear that she had no faith in Plaintiff because of her political support of Yukon and that Defendant was going to have Plaintiff return to her career post as Electronic Systems Engineer. Despite the fact that Defendant Soto reconsidered her decision to relocate Plaintiff, she eventually followed through on her initial promise and reinstated Plaintiff to her career positon, seemingly motivated by political animus. Plaintiff was also assigned to an undesirable and secluded work area.

Defendants' motion is anchored upon the argument that Plaintiff's position as Special Assistant to the Mayor was a "trust" position and political affiliation is a proper requirement of the position. *See Olmeda v. Ortiz-Quinonez*, 434 F.3d 62, 66 (1st Cir. 2006)("In a nutshell, [Section 1983's] protection does not extend to positions which potentially 'involve decision making on issues where there is room for political disagreement on goals or their implementation' and where the jobholder is a policymaker, confidential assistant, spokesman, or similar officeholder."). In Puerto Rico, "'career' employees may only be terminated for cause, whereas 'trust' or 'confidential' employees 'can be selected and removed at will.'" *López-Erquicia v. Weyne-Roig*, 846 F.3d 480, 483 (1st Cir. 2017)(citing P.R. Laws Ann. tit. 3, §§ 1462e, 1465 and § 1462c). The Court's analysis turns on the "[a]ctual functions of the job, not titles" and the "official description of job functions is a presumptively reliable basis for determining those functions." *Uphoff Figueroa v. Alejandro*, 597 F.3d 423, 430 (1st Cir. 2010)(internal citations omitted); *see also Galloza*, 389 F.3d at 31 ("[A] perusal of the job description for the position is the most useful starting point for determining the position's inherent attributes."). Historically, the First Circuit has found the following positions not protected by Section 1983:

> Assistant Secretary of State for Protocol Affairs at the Puerto Rico State Department, who made recommendations to and counseled Puerto Rico's highest elected officials; a municipal recreation commissioner with "considerable capacity to influence municipal decisions affecting parks and recreation;" an "administrator" who developed legal strategy on environmental law issues and cases for the Puerto Rico; a municipal police chief; an "Executive II" in Puerto Rico's Department of Labor who participated in "the formulation and implementation of public and finance policy; "a regional tax administrator; associate directors of several community centers; and an audit director who supervised employees and counseled a senior official about policy matters.

*López-Erquicia*, 846 F.3d at 486 (citations and marks omitted).

Nevertheless, deciding whether to afford First Amendment protection on a particular employee depends on the facts of the case. Courts in the First Circuit generally employ a two-prong analysis to determine whether a job is policymaking in nature. The first prong "necessitates a high-level glimpse of the purpose of the employing agency and the role that the particular position occupies within it . . . [in order to determine] whether the agency employing the plaintiff handle[s] matters potentially subject to partisan political differences," *Galloza*, 389 F.3d at 29. This factor does not provide much guidance to the Court's analysis as the employing agency, a municipality, provides a broad spectrum of services to its residents. The office of the mayor, where Plaintiff was a Special Assistant, oversees all these services. However, because Plaintiff's assignment was limited to supervising the "Los Indiesitos" day-care center run by the municipality, the second analytical prong should prove dispositive.

The second prong is narrowly focused on drawing the line between the policymakers, for which political affiliation is crucial, and non-policymakers. In doing so, the Court should "examine the particular responsibilities of the position to determine whether it resembles a policymaker, a privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement." *López-Erquicia*, 846 F.3d at 485. Courts should also weigh factors such as relative pay, title, and legal or legislative classification. *See Galloza* at 29.

Here, Plaintiff's functions at the center appear primarily clerical. Plaintiff was supervised personnel, coordinated activities and social services for the children, coordinated the training for the center's employers, drafted proposals to request federal funding for the daycare, and drafted letters and memoranda. These functions are not those of a policymaker privy to confidential information. Instead, these resememble routine administrative tasks, as opposed to policy-driven determinations. *But see Flynn v. City of Boston*, 140 F.3d 42, 45 (1st Cir. 1998)(finding an associate director of administration and finance and associate director for field operations of a Boston community center were unprotected by Section 1983's bar on political discrimination.). Therefore, despite Defendants attempt to paint stripes on a horse and call it a zebra, Plaintiff's "trust" position as Special Assistant to the Mayor is plausible entitled to First Amendment Protection. In any event, at this pre-discovery stage, the Court is not in a position to make a definitive determination on the characteristics of Plaintiff's work. *See García-Catalán v. United States*, 734 F.3d 100, 104 (1st Cir. 2013). Accordingly, the Court finds that Plaintiff has pled sufficient facts to proceed with her political discrimination claim and Defendant's Motion to Dismiss Plaintiff's Section 1983 Political Discrimination claim is **DENIED**.

### First Amendment Retaliation

"A State may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech." *Ranking v. McPherson*, 483 U.S. 378, 383 (1987)(citing *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)). "Public employees do not lose their First Amendment rights to speak on matters of public concern simply because they are public employees." *Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir. 2007).

In order to succeed on a claim of free speech retaliation, a plaintiff "must show that he spoke as a citizen on a matter of public concern, that his interest in speaking outweighed the government's interest, as his employer, in promoting the efficiency of the public services it provides," and "that his speech was a substantial or motivating factor in [the adverse employment action]." *Rodriguez v. Municipality of San Juan*, 659 F.3d 168, 180 (1st Cir. 2011)(internal citations and quotations omitted). Defendants aver that Plaintiff

14

has failed to plead which constitutionally protected statement prompted the alleged adverse employment actions.

The controlling factor in determining whether a plaintiff "spoke as a citizen" is whether the employee's speech was made pursuant to his official duties.  This determination is outcome determinative, as statements made by public employees pursuant to their official duties are not protected for First Amendment purposes. *See Garcetti v. Ceballos*, 547 U.S. 410, 420-21 (2006). In order to determine whether an employee spoke as a citizen, a court must first ascertain what the employee's official responsibilities are and then analyze whether the statements in question were made pursuant to those responsibilities.  *Decotiis v. Whittemore*, 635 F.3d 22, 31 (1st Cir. 2011).  The First Circuit has outlined several non-exclusive factors to aid in the determination of whether the statements in question were made pursuant to the employee's official responsibilities:

> (1) whether the employee was commissioned or paid to make the speech in question; (2) the subject matter of the speech; (3) whether the speech was made up the chain of command; (4) whether the employee spoke at her place of employment; (5) whether the speech gave objective observers the impression that the employee represented the employer when she spoke (lending it "official significance"); (6) whether the employee's speech derived from special knowledge obtained during the course of her employment; and (7) whether there is a so-called citizen analogue to the speech. *Decotiis*, 635 F.3d at 32.

Here, Plaintiff spoke on a matter of public concern—misuse of municipal property—when she filed complaints with Human Resources and the OEG about political propaganda being printed and photocopied on the Municipality's copy machines. Plaintiff did not make these statements pursuant to her official duties or up the chain of command. After making these statements, Plaintiff's computer was seized for investigation, she was stripped of duties previously assigned to her career position, she was barred from handling any information regarding high-ranking Municipal officials, and she was assigned to an undesirable work area. Plaintiff also asserts she was the subject of hostile treatment by some superiors at her workplace. Accordingly, upon finding that Plaintiff has adequately alleged that she spoke as a private citizen on a matter

of public concern and was subsequently penalized for it, Defendant's Motion to Dismiss Plaintiff's Section 1983 Retaliation Claim is **DENIED**.

## B.  ADA Claim

### *Prima Facie* ADA Case

The ADA "prohibits an employer from discriminating against a qualified person with a disability in regard to 'job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment' because of his or her disability or perceived disability." *Ramos-Echevarria v. Pichis, Inc.*, 659 F.3d 182, 186 (1st Cir. 2011)(quoting 42 U.S.C. § 12112(a) (1990).  In order to succeed on a disability discrimination claim, a plaintiff must prove that: (1) she is disabled within the meaning of the ADA; (2) she was able to perform the essential functions of the job with or without a reasonable accommodation; and (3) that she was discharged or adversely affected, in whole or in part, because of [his] disability. *Ruiz Rivera v. Pfizer Pharm., LLC,* 521 F.3d 76, 82 (1st Cir.2008). Nevertheless, at the motion to dismiss stage, the Court shall be flexible, as no single allegation must establish a particular element provided that the allegations in the complaint make the reasonable accommodation claim plausible.  *Garayalde-Rijos v. Municipality of Carolina*, 747 F.3d 15, 24 (1st Cir. 2014)("The plausibility standard governs on a motion to dismiss. So, '[n]o single allegation need [establish] ... some necessary element [of the cause of action], provided that, in sum, the allegations of the complaint make the claim as a whole at least plausible.'")(quoting *Ocasio–Hernández v. Fortuño–Burset*, 640 F.3d 1, 14–15 (1st Cir. 2011)).

### Disability

The ADA defines the term "disability" in one of the three ways: (1) "a physical or mental impairment that substantially limits one or more major life activities of such individual;" (2) "a record of such an impairment;" or (3) "being regarded as having such an impairment."  42 U.S.C. § 12102(1).  The term "major life activities" includes, but is not limited to, "caring for oneself, performing manual tasks, seeing, hearing,

eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Additionally, substantial limitations in major bodily functions, such as "functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions," entitle an individual to disability status. 42 U.S.C. § 12102(B).

The determination of whether or not a plaintiff has a disability must be made on a case-by-case basis. *See Calero-Cerezo v. U.S. Dept. Of Justice*, 355 F.3d 6, 20 (1st Cir. 2004). In so doing, courts normally consider three questions: (1) Does the plaintiff suffer a physical or mental impairment?; (2) Was the "life activity" limited by plaintiff's impairment "major"?; and (3) Did plaintiff's impairment substantially limit plaintiff's identified major life activity? *Id*. (citing *Bragdon v. Abbott*, 524 U.S. 624, 630–31 (1998)). Looking at the factual assertions outlined by the Plaintiff in the complaint, which the Court must accept as true, the Court finds that the answer to all three questions is obviously in the affirmative. We briefly explain.

Plaintiff suffers from a mental impairment covered by the ADA as the First Circuit has held that major depression is a disability covered by the ADA. *See Calero-Cerezo*, 355 F.3d at 20–21 ("This circuit has recognized depression as a mental impairment that may constitute, at least in some circumstances, a disability under federal law."). In the complaint, Plaintiff alleges that she suffers from lack of concentration, impaired thinking and communication, crying fits, anxiety, stress, loss of appetite, and loss of hair as a result of her condition. Furthermore, Plaintiff's therapist ordered her to request paid medical leave in order to alleviate her condition.

Turning to the second question in our inquiry, the Court finds that the "life activities" limited by Plaintiff's deppression are "major." A "major life activity" is an activity that is of central importance to an individual's daily life. *See Calero-Cerezo*, 355 F.3d at 21. Many of the activities enumerated by Plaintiff in the complaint have been recognized as "major," including communication and concentration. *See Id*. (citing *Criado v. IBM Corp*., 145 F.3d 437, 442-43 (1st Cir. 1998); *Lawson v. CSX Transp., Inc*., 245 F.3d 916, 923

(7th Cir. 2001); *Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 155 (1st Cir. 1998); and *Whitney v. Greenberg, Rosenblatt, Kull & Bitsoli, P.C.*, 258 F.3d 30, 33 n. 4 (1st Cir. 2001)).[7]  Hence, the Court finds that Plaintiff has pled sufficient facts to support the notion that her condition limited a "major" life activity.

Turning to the third and final question in our required inquiry, the Court finds that Plaintiff has made a sufficient showing that her major life activities were "substantially" limited.  Here, Plaintiff posits that her concentration, ability to communicate, and stress levels, among other things, have been severely impacted by her medical condition.  This, in turn, has caused her to causes her to lose her appetite, her hair, and to undergo anxiety and severe emotional distress, which negatively impacted her life on a daily basis.

Accordingly, the Court finds that Plaintiff is a "disabled" individual under the ADA.  We now turn our inquiry to whether she was a "qualified individual," i.e., was she able to perform the essential functions of her job, with or without an accommodation?

### Qualifications

To determine whether an individual is "qualified" under the ADA, a plaintiff must plead, and ultimately prove, that: (1) "she possesses the requisite skill, experience, education, and other job-related requirements for the position;" and (2) she is able to perform the position's essential functions with or without reasonable accommodation."  *Colon-Fontanez v. Municipality of San Juan*, 660 F.3d 17, 32-33 (1st Cir. 2011)(citing *García–Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 646 (1st Cir. 2000)).  An "essential function" is defined as "a fundamental job duty associated with a particular position," which may extend beyond an individual's skills or experience, "even including such individual or idiosyncratic characteristics as scheduling flexibility."  *Calero-Cerezo*, 355 F.3d at 22 (internal citations and quotations omitted).

In the case at bar, Plaintiff held the position of Special Assistant to the Mayor intermittently between 2004 and 2015.  The facts alleged in the complaint suggest that Plaintiff performed her tasks adequately, as

---

[7] The Court notes that working, in and of itself, may be considered a major life activity for purposes of the ADA.  *See Calero-Cerezo*, 355 F.3d at 21.

she was renamed to the position several times throughout the aforementioned eleven-year period. Moreover, Plaintiff served as Special Assistant to Defendant Lorna Soto between July 1, 2014 and November 24, 2014, when Plaintiff went on medical leave. No facts in the complaint suggest that Plaintiff's work performance was not satisfactory.

In similar fashion, Plaintiff's pleadings support the proposition that she is able to perform the essential functions of her work with or without reasonable accommodation as Plaintiff's deppression began around mid-2014 and she returned to work on 2015 and continued to perform the functions of her job effectively. Hence, the Court finds that Plaintiff is a "qualified individual" under the ADA.  We now turn our inquiry to whether Defendants, cognizant of Plaintiff's disability, subjected her to adverse employment actions.

### Discrimination

The Court now turns to the third, and final, prong of our analysis—whether Plaintiff was subjected to adverse employment actions due to her disability. "[D]emotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees" may constitute adverse employment action, subject to the facts of a particular case. *Colon-Fontanez v. Municipality of San Juan*, 660 F.3d 17, 36–37 (1st Cir. 2011)(citing *Hernández–Torres v. Intercont'l Trading, Inc.,* 158 F.3d 43, 47 (1st Cir.1998) and *Blackie v. Maine*, 75 F.3d 716, 725 (1st Cir.1996)). In the instant case , Plaintiff was handed a letter demoting her back to her career position on the day she visited the Human Resources office to extend her medical leave, albeit unpaid. This entailed a substantial salary reduction. Moreover, Plaintiff alleges she continued to face harassment and disparate treatment by her superiors after she returned to work. Altogether, the Court is satisfied that Plaintiff's pleadings are sufficient to support all three prongs of a prima facie ADA claim. Accordingly, Defendant Municipality of Canovanas' Motion to Dismiss Plaintiff's ADA Claim is **DENIED**. On the other hand, Defendant Lorna Soto's Motion to Dismiss Plaintiff's ADA Claim against her, as an individual, is hereby **GRANTED** as there is no individual liability under the ADA. *See Roman-Oliveras v. Puerto Rico Elec. Power Auth.*, 655 F.3d 43, 52 (1st Cir. 2011)(Holding

there is no personal liability under the ADA); *see also Fantini v. Salem State Coll.,* 557 F.3d 22, 31 (1st Cir.2009)(holding that Title VII, analogous to the ADA, does not support claims against individuals nor claims against coworkers.); and *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1078 (3d Cir. 1996)(same).

### C.   Law 115 Claim

Law 115 provides, provides in relevant part that:

> No employer may discharge, threaten, or discriminate against an employee regarding the terms, conditions, compensation, location, benefits or privileges of the employment should the employee offer or attempt to offer, verbally or in writing, any testimony, expression or information before a legislative, administrative or judicial forum in Puerto Rico, when such expressions are not of a defamatory character nor constitute disclosure of privileged information established by law. P.R. Laws Ann. tit. 29, § 194a

An employee must establish "through direct or circumstantial evidence," a "she (a) 'participated in an activity protected by §§ 194 et seq.' and (b) 'was subsequently discharged.'" *Lupu v. Wyndham El Conquistador Resort & Golden Door Spa*, 524 F.3d 312, 313 (1st Cir. 2008). "In order to prevail on a claim under Law 115, a plaintiff-employee must show that she engaged in protected activity and that she was thereafter 'discriminated against regarding her employment.'" *Velez v. Janssen Ortho, LLC*, 467 F.3d 802, 809 (1st Cir. 2006)(internal citations omitted). If the employer "has provided a legitimate non-discriminatory reason, the ultimate burden of showing pretext still falls on the plaintiff." *Rivera Rodriguez v. Sears Roebuck De Puerto Rico, Inc.*, 432 F.3d 379, 383 n. 2 (1st Cir. 2005).

The Court already found that Plaintiff pled an actionable retaliation claim under Section 1983 stemming from her complaint before the Municipality's Human Resources Office and the OEG. *See supra* at 15.  The Court reaches the same conclusion as to Plaintiff's Law 115 claim. Because Plaintiff filed a charge with the OEG and Plaintiff has pled sufficient facts to suggest adverse employment actions resulted from the

filing of that charge, the Court finds Plaintiff has also pled a plausible Law 115 claim. Defendants' Motion to Dismiss Plaintiff's Law 115 claim is **DENIED**.

## IV. CONCLUSION

For the aforementioned reasons, the Court hereby **GRANTS in part AND DENIES in part** Defendants' *Motion to Dismiss* (Docket No. 24):

(a) Plaintiff's ADA claim against Defendant Lorna Soto, as an individual, is hereby **DISMISSED with prejudice**;

(b) Plaintiff's Fourteenth Amendment Due Process and Equal Protection Claims are voluntarily **DISMISSED without prejudice**;

(c) Plaintiff's Article 1802 and 1803 of the Puerto Rico Civil Code Claims are voluntarily **DISMISSED without prejudice**;

(d) Plaintiff's Law 100 Claim is voluntarily **DISMISSED without prejudice**;

(e) and Defendants' *Motion to Dismiss* as to all of Plaintiff's remaining claims is **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 16th day of March, 2017.

s/ Daniel R. Dominguez

DANIEL R. DOMINGUEZ
U.S. DISTRICT JUDGE